IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| VERNESSA R. WILSON, ) | CIVIL ACTION NO. 9:10-3008-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____) | |



The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. Plaintiff filed an application for Disability Insurance Benefits (DIB) on August 25, 2006, alleging disability as of June 15, 2005 due to a ligament tear in her right wrist, carpal tunnel syndrome, bursitis in her right hip, arthritis in her back, depression, and anxiety. (R.pp. 80-85, 106, 144).

Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on March 31, 2009. (R.pp. 19-39). The ALJ thereafter denied Plaintiff's claim in a decision issued August 20, 2009. (R.pp. 9-18). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-4).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further proceedings or for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

**Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).



**Discussion**

A review of the record shows that Plaintiff, who was forty-nine (49) years old when she alleges she became disabled, has a high school education with some technical college training, and past relevant work as a weaver/weave technician and automobile production associate. (R.pp. 17, 94). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[1] of status post right wrist arthroscopic surgery, X two; right wrist pain; and degenerative disc disease, rendering her unable to perform her past relevant work, she nevertheless retained the residual functional capacity (RFC) to perform a restricted range of light work,[2] and was therefore not entitled to disability benefits. (R.pp. 11-12, 17).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to perform a function by function assessment as required by SSR 96-8(p), by improperly discounting Plaintiff's subjective testimony and evidence as to the extent of her pain and limitations, and by generally failing to adequately explain in his decision how he reached his findings and conclusions. However,

---

[1] An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



after careful review and consideration of the evidence and arguments presented, the Court finds for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision must therefore be affirmed.

The medical record reflects that Plaintiff underwent right wrist arthroscopic surgery in June 2005, which was performed by Dr. John Sanders. Plaintiff alleges she has been disabled since that time. However, Plaintiff showed improvement post surgery, and on August 8, 2005 Dr. Sanders noted that "[i]f light work were available, she would be allowed to return to light use of her right hand, no lifting greater than 5 pounds, and use of her right wrist splint at work." Further, when Plaintiff returned to see Dr. Sanders on September 12, 2005, she stated that the reason she had not yet returned to work was because there was "no light work [ ] available". Plaintiff told Dr. Sanders on this visit that she had incurred some increased wrist discomfort after using a hammer at her home, and on examination Dr. Sanders found that she had some "mild" discomfort to deep palpation in the affected area. No instability was noted, however, and Dr. Sanders opined that Plaintiff was "showing slow but gradual improvement." He again released her to return to work, this time with no lifting greater than *twenty* pounds with the right hand and the use of her wrist splint at work. (R.p. 152).

On October 17, 2005, Plaintiff was still complaining of some discomfort, but Dr. Sanders again returned her to work with the restriction of no repetitive ulnar deviation of the right wrist such as hammering and recommended usage of an elastic wrist support. When Plaintiff returned to see Dr. Sanders on November 28, 2005, her grip strength was continuing to improve. Plaintiff told Dr. Sanders that she was going to be off for four weeks over the holidays and that ideally she would like to attempt to return to work without any specific restrictions when she returned. Dr. Sanders therefore continued Plaintiff on her current restrictions for an additional four



weeks, and noted that if no exacerbation was found at "recheck", Plaintiff's request to return to work without restriction would "be accommodated." (R.p. 151).

However, when Plaintiff returned to see Dr. Sanders on December 30, 2005, she advised that she had given her work restrictions "a great deal of thought and discussed this with her husband", and advised that, as she still had discomfort in the wrist with household activities, she would prefer to have work restrictions. Dr. Sanders then opined that Plaintiff had reached maximum medical improvement, and assigned Plaintiff a residual eight (8%) percent permanent partial impairment to the right upper extremity as a result of her persistent wrist symptoms. Cf. Monier v. Apfel, 22 F.Supp. 2d 1035, 1046 (E.D.Mo. 1998)[Plaintiff found not disabled despite physician's finding that Plaintiff had a permanent partial disability of 30% of the left upper extremity at the wrist and 20% of the right upper extremity at the wrist]; Waters v. Gardner, 452 F.2d 855, 858 (9th Cir. 1971) [concluding that a whole person impairment rating of less than thirty (30%) percent was inconsistent with allegations of disability]. Dr. Sanders released Plaintiff to work with permanent work restrictions of no lifting greater than twenty five (25) pounds with the right upper extremity and avoidance of activities which required greater than twenty (20) degrees of ulnar deviation on a repetitive basis. (R.p. 150). See Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[noting importance of treating physician opinion].

Plaintiff continued thereafter to see Dr. Sanders on a regular basis. On March 20, 2006 Plaintiff complained of increased pain in her right wrist which she incurred when she was vacuuming. Dr. Sanders noted that Plaintiff's "[e]xamination is not significantly changed" and that "[n]o frank instability is appreciated". He recommended Plaintiff obtain an MRI and continued her with her current work restrictions. (R.p. 149). An MRI was subsequently performed which showed



some ligament tearing and fraying, some chondroplasia, and an area of edema, following which Dr. Sanders recommended a repeat right wrist arthroscopy with reinspection of the areas of involvement. Id. This procedure was thereafter performed, and on May 8, 2006 it was noted that Plaintiff was doing fairly well postoperatively, she had full range of motion in the fingers and thumb, had wrist extension of fifty degrees and flexion fifteen degrees, with sixty-five degrees of supination and forty-five degrees pronation, with no instability. (R.p. 148). After a followup visit on May 31, 2006, Plaintiff went on a vacation. (R.p. 147).

      Plaintiff returned to see Dr. Sanders on June 28, 2006, complaining that she still had some wrist pain with activities such as trying to lift a phone book. On examination Dr. Sanders believed Plaintiff was providing "questionable input" when he attempted to measure her grip strength.[3] See Anderson v. Barnhart, 344 F.3d 809, 815 (8th Cir. 2003)[Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]; Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996)[Reports of claimant's symptom exaggeration and inconsistent effort in performing strength test weighed against credibility]. (R.p. 147). Dr. Sanders also performed a comprehensive upper extremity evaluation, following which he opined that Plaintiff had reached maximum medical improvement on June 28, 2006. He opined that Plaintiff had a twenty percent permanent partial impairment to the right upper extremity based on her residual loss of motion and strength, and assigned a permanent work restriction of no lifting greater than ten to fifteen pounds with the right hand/wrist on a repetitive basis, and no activities that require repetitive ulnar deviation of the wrist (i.e. activities such as hammering). (R.p. 146).

---

[3] Dr. Sanders also noted that, during her evaluation, Plaintiff was "guarding" when attempts were made to assess her range of motion. (R.p. 146).



The ALJ extensively discussed Dr. Sanders' records and findings in her decision, accorded his assessments significant weight, and specifically incorporated Dr. Sanders' limitations into the Plaintiff's residual functional capacity. (R.pp. 12-14, 146). Craig, 76 F.3d at 589-590 [noting importance of treating physician opinion]. The Court can discern no reversible error in the ALJ's treatment and consideration of Dr. Sanders' records and opinion. See also Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability].

The record reflects that Plaintiff filed her application for disability benefits shortly after her release from Dr. Sanders' care in June 2006. On October 19, 2006, State Agency Physician Dr. William Hopkins reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment in which he opined that Plaintiff had the RFC for medium work[4], with the only restriction noted being that Plaintiff could only perform frequent handling (not repetitive) in the right upper extremity and wrist, with no hammering (i.e., jobs that require repetitive ulnar deviation). (R.pp. 200-207). The ALJ discussed and considered Dr. Hopkins' findings as to Plaintiff's functional capacity in reaching her decision. (R.p. 16). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner].

From December 2006 to June 2007, Plaintiff was seen on an occasional basis in the office of Family Practitioner Dr. Graham Lawrence. Dr. Lawrence's records show that on January 24, 2007, a prescription was called in to a pharmacist for Lexapro. (R.p. 217). On February 7, 2007,

---

[4]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

The ALJ extensively discussed Dr. Sanders' records and findings in her decision, accorded his assessments significant weight, and specifically incorporated Dr. Sanders' limitations into the Plaintiff's residual functional capacity. (R.pp. 12-14, 146). Craig, 76 F.3d at 589-590 [noting importance of treating physician opinion]. The Court can discern no reversible error in the ALJ's treatment and consideration of Dr. Sanders' records and opinion. See also Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability].

The record reflects that Plaintiff filed her application for disability benefits shortly after her release from Dr. Sanders' care in June 2006. On October 19, 2006, State Agency Physician Dr. William Hopkins reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment in which he opined that Plaintiff had the RFC for medium work[4], with the only restriction noted being that Plaintiff could only perform frequent handling (not repetitive) in the right upper extremity and wrist, with no hammering (i.e., jobs that require repetitive ulnar deviation). (R.pp. 200-207). The ALJ discussed and considered Dr. Hopkins' findings as to Plaintiff's functional capacity in reaching her decision. (R.p. 16). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner].

From December 2006 to June 2007, Plaintiff was seen on an occasional basis in the office of Family Practitioner Dr. Graham Lawrence. Dr. Lawrence's records show that on January 24, 2007, a prescription was called in to a pharmacist for Lexapro. (R.p. 217). On February 7, 2007,

---

[4]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



Plaintiff presented with a complaint of lower back pain,[5] "worse if she mops or sweeps". An x-ray revealed only mild degenerative changes of the spine, and Plaintiff was advised to take Aleve (an over the counter medication). (R.pp. 218-220). On May 31, 2007, Plaintiff obtained a refill of Lexapro and Synthroid. (R.p. 221). On June 1, 2007, Plaintiff's Lexapro prescription was changed at her request to Celexa or Prozac so that she could qualify for a four dollar co-pay. (R.pp. 211-223). The ALJ discussed Dr. Lawrence's medical records in her decision, specifically noting that Plaintiff's x-rays showed only mild degenerative changes and that Plaintiff had complained of back pain on only one occasion for which she was advised to take over the counter medication. (R.p. 14). Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [conservative treatment not consistent with allegations of disability].

On July 6, 2007, Plaintiff underwent a consultative examination by Dr. Alexander Patrick. Plaintiff told to Dr. Patrick that she was not able to use her right hand because it "hurt so much", and that she had had depression since she had been out of work. Plaintiff advised Dr. Patrick that she had not seen Dr. Lawrence in about six months. Dr. Patrick noted that Plaintiff had driven herself to the appointment and reported that she did her own housework and shopping. On examination Plaintiff was found to be well developed and in no acute distress, her affect was normal, and she was oriented X 3. Plaintiff had full range of motion of the neck, and was able to undress herself and get on the examination table without any problems. Her upper extremities had a full range of motion without limitation, and while the right wrist was tender, Dr. Patrick did not see any muscle atrophy. Dr. Patrick noted a lack of effort by the Plaintiff on strength tests, and that "there

---

[5]The Commissioner notes that this is the only complaint by Plaintiff of back pain in the record.



was no muscle atrophy that I could tell anywhere." See Haynes v. Astrue, No. 09-484, 2010 WL 3377715 at * 3 (M.D.Ala. Aug. 25, 2010)["Muscle atrophy is an objective medical indication of pain and lack thereof in [Plaintiff] militates against the conclusion that she suffers from pain which precludes her from substantial gainful activity."].

Dr. Patrick also noted that when checking the strength in Plaintiff's hands, she preformed the same with both her left and right arms, even though there was nothing alleged to be wrong with her left arm, and that although Plaintiff used her left arm and hand exclusively, he noted that she did use her right hand when getting undressed and also picked an object up off of the floor with her right hand. Dr. Patrick stated that the "left wrist and arm are completely normal as far as I can tell although she had somewhat the same strength in both and she could not have gotten her clothes on or driven here with the strength that she exhibited when I tested it." See Anderson, 344 F.3d at 815 [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]. Plaintiff's lower extremities also showed a full range of motion without limitation, Plaintiff was able to ambulate without any problems or without any trouble, and her neurological exam was bilaterally symmetric and normal, as was her mood and affect. Further, although Dr. Patrick diagnosed Plaintiff with depression (apparently from her self report), he noted that Plaintiff "doesn't display any kind of emotional problems at the present time", and that her "ability to concentrate certainly is fine." (R.pp. 225-226). The ALJ noted Dr. Patrick's report and findings in reaching her decision, concluding that the inconsistencies between Plaintiff's physical examination and her demonstrated physical activities certainly adversely affected her credibility. (R.pp. 14-15). Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [assessment of an examining physician may properly be given significant weight].



Later that same month, on July 26, 2007, a second State Agency Medical Consultant (Dr. Seham El-Ibiary) reviewed Plaintiff's medical records and reached the same conclusions as to Plaintiff's residual functional capacity as had Dr. Hopkins, except that he restricted her push/pull on the right and postural activities to "frequent," with occasional crawling. (R.pp. 241-248). The ALJ specifically noted these functional findings in her decision, which were given considerable weight. (R.p. 16). Smith, 795 F.2d at 345 [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner].

The ALJ reviewed this medical record and Plaintiff's subjective testimony as to the extent of her pain and limitations and found that Plaintiff retained the RFC to perform light work except that she can lift and/or carry no more than ten pounds with the right arm and hand and cannot perform repetitive lifting with the right arm and hand. (R.p. 12). The record contains ample substantial evidence to support the ALJ's findings and conclusions. See generally, (R.pp. 146-147, 200-207, 218-220, 225-226, 241-248). Indeed, it readily apparent that the ALJ gave the Plaintiff every benefit of the doubt in limiting her to light work with the restrictions noted, rather than the greater level of medium work as was found by the State Agency Physicians. (R.pp. 16-17). Cf. Marquez v. Astrue, No. 08-206, 2009 WL 3063106, at * 4 (C.D.Cal. Sept. 21, 2009)[No error where ALJ's RFC finding was even more restrictive than the exertional levels suggested by the State Agency examiner].

A review of the decision shows that the ALJ thoroughly discussed the medical records and findings of Plaintiff's physicians as well as Plaintiff's own testimony, noting the physical and



mental findings[6] as reflected in the medical evidence, the effectiveness of Plaintiff's treatments, and that her findings were based on the evidence of record and why. This review, discussion and analysis of the record and evidence as set forth in the decision satisfies the requirements of SSR 96-8p; cf. Roberts v. Masanari, 150 F.Supp.2d 1004, 1010 (W.D.Mo. 2001); Buchholtz v. Barnhart, 98 Fed.Appx. 540, 547 (7th Cir. 2004); Delgado v. Commissioner of Social Serv., 30 Fed.Appx. 542, 547-548 (6th Cir. 2002); and Plaintiff's argument that the ALJ should have gone into even greater detail with respect to her findings is without merit. Dryer v. Barnhart, 395 F.3d 1206, 1211( 11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision]; Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C. 2002). See also Osgar v. Barnhart, No. 02-2552, 2004 WL 3751471 at *5 (D.S.C. Mar. 29, 2004), aff'd; Knox v. Astrue, 327 Fed.Appx. 652, 657 (7th Cir. 2009)["[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient"], citing Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record]; Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning

---

[6] With respect to Plaintiff's claim of depression, the ALJ found that this impairment was non-severe as it resulted in no more than mild limitations in her mental functioning. (R.pp. 11-12). Foster v. Bowen, 853 F.2d 483, 489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits. There must be a showing of related functional loss]. Substantial evidence supports this finding. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]. In reaching this conclusion, the ALJ noted not only Plaintiff's ability to perform activities of daily living, her personal relationships and social interaction, and her ability to perform activities requiring concentration [R.pp. 224-226], but also the fact that Dr. Patrick had found no mental impairment as well as the findings of two State Agency Psychologists, who after review of the medical record determined that Plaintiff's depression was a non-severe impairment that resulted in no more than mild limitations in her mental functions. (R.pp. 11-12, 16, 186-199, 226-240).



mind would accept as sufficient to support a particular conclusion"]; Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational].

The Court also does not find that the ALJ conducted an improper credibility analysis, or that her decision otherwise reflects a failure to properly consider the subjective testimony and evidence in this case. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]. The decision reflects that the ALJ reviewed Plaintiff's testimony and found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not fully credible. In doing so, the ALJ not only noted the objective medical evidence showing that Plaintiff had a greater exertional capacity than she claimed, but also the evidence that Plaintiff exaggerated her symptoms, the fact that no physician had opined that Plaintiff was disabled from performing all work activity, the lack of muscle atrophy and the minimal findings of her examinations, and the fact that Plaintiff's range of activities belied her claims of disabling pain. (R.pp. 13-16). See generally, Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Goodwater v. Barnhart, 579 F.Supp. 746, 757 (D.S.C. 2007)[Noting no physician ever opined that Plaintiff was disabled]; Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991)[Finding that where no physician opined that Plaintiff was totally and permanently disabled supported a finding of no disability]; Haynes, 2010 WL 3377715 at * 3 ["Muscle atrophy is an objective medical indication of pain and lack thereof in [Plaintiff] militates against the conclusion that she suffers from pain which precludes her from substantial gainful activity."]; see also Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994)[In

12



assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)[ALJ is entitled to observe the Plaintiff, evaluate her demeanor, and consider how the Plaintiff's testimony fits with the rest of the evidence]. This argument is therefore without merit. Bowen, 482 U.S. at 146, n. 5 [Plaintiff has the burden to show that she has a disabling impairment]; Jolley v. Weinberger, 537 F.2d at 1181 [finding that the objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Robinson, 956 F.2d at 840 [Generally conservative treatment not consistent with allegations of disability]; Anderson, 344 F.3d at 815 [Evidence that a claimant is exaggerating symptoms can be considered as part of the evaluation of Plaintiff's subjective complaints]; Cruse, 867 F.2d at 1186 ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability"]; Gaskin v. Commissioner of Social Security, 280 Fed.Appx. 472, 477 (6th Cir. 2008)[Finding that evidence of no muscle atrophy and that claimant "possesses normal strength" contradicted Plaintiff's claims of disabling physical impairment].

      Finally, the record reflects that at the hearing the ALJ obtained vocational expert testimony, and that in a response to a hypothetical from the ALJ which included all of the limitations found by the ALJ, the VE identified several jobs Plaintiff could perform with those limitations. (R.pp. 33-37). While Plaintiff may disagree with the findings of the ALJ, since the Court has concluded that these findings are supported by substantial evidence in the record as that term in defined in the applicable caselaw, the hypothetical given by the ALJ to the Vocational Expert was proper, and the Court finds no grounds in the ALJ's treatment of the Vocational Expert's testimony for reversal of the final decision of the Commissioner. Lee, 945 F.2d at 692 [ALJ not required to

13



9:10-cv-03008-BM     Date Filed 11/22/11     Entry Number 19     Page 14 of 14

include limitations or restrictions in his hypothetical question that he finds are not supported by the record]; see also Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986).

### Conclusion

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is **Ordered** that the decision of the Commissioner is **affirmed**.

**IT IS SO ORDERED**.

_____
Bristow Marchant
United States Magistrate Judge

November 22, 2011
Charleston, South Carolina

**The parties are hereby notified that any right to appeal this Order is governed by Rules 3 and 4 of the Federal Rules of Appellate Procedure.**



14